COURT OF APPEALS OF VIRGINIA


Present: Judges Willis, Elder and Bray
Argued at Richmond, Virginia


CHRISTOPHER EMANUEL MOSLEY, S/K/A
 CHRISTOPHER EMMANUEL MOSLEY
                                    MEMORANDUM OPINION[*] BY
v.    Record No. 0879-00-2          JUDGE LARRY G. ELDER
                                         MAY 15, 2001
COMMONWEALTH OF VIRGINIA


           FROM THE CIRCUIT COURT OF KING AND QUEEN COUNTY
                      Thomas B. Hoover, Judge

           John C. Jones, Jr., for appellant.

           Susan M. Harris, Assistant Attorney General
           (Mark L. Earley, Attorney General, on brief),
           for appellee.


     Christopher Emanuel Mosley (appellant) was convicted in a

jury trial for the attempted capital murder of a police officer,

use of a firearm in the commission of that offense, possession

of cocaine, and possession of a firearm while in possession of

cocaine, pursuant to Code §§ 18.2-31, 18.2-53.1, 18.2-250 and

18.2-308.4, respectively. On appeal, he argues that the trial

court erroneously found the officer's non-consensual touching of

his pocket was not a pat-down search and that the officer lacked

the reasonable articulable suspicion necessary to support a

pat-down search of appellant. Therefore, he contends, the trial

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

court erroneously denied his motion to suppress.  We hold the evidence supported the trial court's finding of reasonable articulable suspicion necessary for a pat-down search, and we affirm appellant's convictions.

At a hearing on a defendant's motion to suppress, the Commonwealth has the burden of proving that a warrantless search or seizure did not violate the defendant's Fourth Amendment rights.  See Simmons v. Commonwealth, 238 Va. 200, 204, 380 S.E.2d 656, 659 (1989).  On appeal, we consider the evidence adduced at both the suppression hearing and the trial, DePriest v. Commonwealth, 4 Va. App. 577, 583, 359 S.E.2d 540, 542-43 (1987), and we view the evidence in the light most favorable to the prevailing party, here the Commonwealth, granting to its evidence all reasonable inferences fairly deducible therefrom, Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991).  "[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them[,] and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers."  McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc) (citing Ornelas v. United States, 517 U.S. 690, 699, 116 S. Ct. 1657, 1663, 134 L. Ed. 2d 911 (1996)).  However, we review de novo the trial court's application of defined legal standards such as reasonable

-

suspicion to the particular facts of the case.  See Ornelas, 517
U.S. at 699, 116 S. Ct. at 1663.

"Fourth Amendment jurisprudence recognizes three categories
of police-citizen confrontations: (1) consensual encounters,
(2) brief, minimally intrusive investigatory detentions, based
upon specific, articulable facts, commonly referred to as Terry
stops, see Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20
L. Ed. 2d 889 (1968), and (3) highly intrusive arrests and
searches founded on probable cause."  Wechsler v. Commonwealth,
20 Va. App. 162, 169, 455 S.E.2d 744, 747 (1995).  In order to
justify a Terry stop, "an officer must have a 'reasonable and
articulable suspicion of criminal activity on the part of the
defendant . . . .'"  Hatcher v. Commonwealth, 14 Va. App. 487,
490, 419 S.E.2d 256, 258 (1992) (quoting Commonwealth v.
Holloway, 9 Va. App. 11, 15, 384 S.E.2d 99, 101 (1989)).  An
officer who develops reasonable suspicion that criminal activity
is occurring may stop a person "'in order to identify him, to
question him briefly, or to detain him briefly, while attempting
to obtain additional information'" in order to confirm or dispel
his suspicions.  DePriest, 4 Va. App. at 585, 359 S.E.2d at 544
(quoting Hayes v. Florida, 470 U.S. 811, 816, 105 S. Ct. 1643,
1647, 84 L. Ed. 2d 705 (1985)).

Although an officer may not search a suspect simply because
he is effecting a Terry stop, the officer may conduct a pat-down
search for weapons if he "has reason to believe that the suspect

-

is armed and dangerous."  Adams v. Williams, 407 U.S. 143, 146, 92 S. Ct. 1921, 1923, 32 L. Ed. 2d 612 (1972).  Circumstances "relevant in [this] analysis include characteristics of the area surrounding the stop, the time of the stop, the specific conduct of the suspect individual, the character of the offense under suspicion, and the unique perspective of a police officer trained and experienced in the detection of crime."  Christian v. Commonwealth, 33 Va. App. 704, 714, 536 S.E.2d 477, 482 (2000) (en banc) (footnote omitted) (recognizing in footnote that "[t]he relationship between the distribution of controlled substances . . . and the possession and use of dangerous weapons is now well recognized" (quoting Logan v. Commonwealth, 19 Va. App. 437, 445, 452 S.E.2d 364, 369 (1994) (en banc)).

Our review of the existence of reasonable suspicion involves application of an objective rather than subjective standard.  See, e.g., Whren v. United States, 517 U.S. 806, 812-13, 116 S. Ct. 1769, 1774, 135 L. Ed. 2d 89 (1996). Ordinarily, the fact "'that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as [all] the circumstances, viewed objectively, justify that action.'"  Id. at 813, 116 S. Ct. at 1774 (quoting Scott v. United States, 436 U.S. 128, 138, 98 S. Ct. 1717, 1723, 56 L. Ed. 2d 168 (1978)).

-

Even if we assume without deciding that Trooper E.D. Gray's indirect request to appellant to exit the Ford Escort in which appellant was a passenger so that Trooper Gray could search the vehicle was improper because the request was not justified by the lawful traffic stop, which had ended, or by the driver's purported consent to search,[1] nevertheless, Trooper Gray had the reasonable suspicion necessary to detain and question appellant about the likely cigarette violation he observed when he first stopped the vehicle and in fact testified that he intended to do so later during the encounter.

Reasonable suspicion of the cigarette violation permitted Trooper Gray to remove appellant from the car, at which time additional facts provided him with reason to believe appellant was armed. Although the stop occurred during daylight hours, it occurred in the vicinity of the B.P. gas station, behind which "a lot of people were . . . congregating" despite the presence of "no loitering" signs. Trooper Gray had made several arrests in that area for drug and weapons possession. Before stopping

---

[1] An officer may require passengers to exit a lawfully stopped vehicle for officer safety without particularized suspicion of danger or wrongdoing. See Maryland v. Wilson, 519 U.S. 408, 414-15, 117 S. Ct. 882, 886, 137 L. Ed. 2d 41 (1997). However, under at least some circumstances, when the lawful stop of the vehicle has been completed and the officer lacks reasonable suspicion of any further criminal activity, a search purportedly based on the driver's consent violates the Fourth Amendment because a reasonable person in the driver's position would not believe he is free to disregard the officer's request and simply drive away. See Reittinger v. Commonwealth, 260 Va. 232, 236-37, 532 S.E.2d 25, 27-28 (2000).

-

the Escort, Trooper Gray observed appellant run from the area behind the station where people were congregating and enter the passenger side of the vehicle. Although the stop itself occurred a short distance from the gas station, Trooper Gray activated his lights and turned his vehicle around on the station's premises, presumably alerting all those congregating there that the stop was about to occur. Just as appellant exited the vehicle, the driver's brother arrived at the scene and refused Trooper Gray's request to leave. Although Trooper Gray had requested backup, Trooper McGee had not yet arrived at the scene.

Trooper Gray then noticed that appellant's pants pockets "were real bulgy," despite the fact that the pants themselves were baggy, and he observed that "something sharp stuck out" of one of them. Although appellant denied having a weapon, Trooper Gray "wanted to make sure," based on the size of "the bulge . . . and the sharpness of it," that "it was not a weapon that would harm [him]." When he touched the bulge with the back of his hand, he determined it was hard and sharp, and his fears that appellant was armed were not dispelled. At that time, Trooper Gray would have been justified in reaching into appellant's pocket to determine the object was not a weapon. However, he followed a less intrusive course, asking appellant again whether he had any weapons or perhaps what was in his

-

pocket, and appellant pulled several items out of the pocket himself, including a pager and suspected crack cocaine.

These facts, viewed in their entirety, supported the trial court's conclusion that the pat-down search which led to Trooper Gray's discovery of the cocaine was justified by reasonable suspicion to believe, first, that appellant was a minor in possession of tobacco in violation of Code § 18.2-371.2 and, second, that appellant was armed and dangerous.

Appellant's suggestion that the trial court based its ruling on the faulty conclusion that the touching of appellant's pocket was not a pat-down search is belied by the record. Although the trial court said that what Trooper Gray did was "not really even a pat-down," it also described his actions as "a very limited pat-down" and said "[i]f you want to call it a pat-down, okay." Appellant does not contest the trial court's finding that he "voluntarily pulled the items out of [his] pocket" after Trooper Gray questioned him about the pocket's contents. Even if he did contest this finding, as set out above, the reasonable suspicion which supported the pat-down also supported a search of the contents of appellant's pocket in order to dispel Trooper Gray's concern that appellant was, in fact, carrying a weapon. Thus, the evidence supports the trial court's denial of appellant's motion to suppress.

-

For these reasons, we hold the trial court's denial of appellant's motion to suppress was not erroneous, and we affirm appellant's convictions.

<u>Affirmed.</u>